CLARA NEWBERGER, Executrix *vs.* NEW YORK LIFE INSURANCE COMPANY.

SAME *vs.* SAME.

JULY 24, 1936.

PRESENT: Flynn, C. J., Capotosto, Baker, and Condon, JJ.

BAKER, J. These actions of assumpsit were heard in the superior court on the defendant's demurrer to the amended declaration in each case. They are now before us on the plaintiff's exception to the decision of that court sustaining the demurrer.

The same question is involved in both cases. The actions are brought by the insured's executrix to recover certain disability benefits alleged to be due under two life insurance policies issued by the defendant. The provisions of the policies are identical except for the dates and amounts. It appears from the amended declarations that the first policy was taken out January 13, 1919, and the second policy October 8, 1920, which dates became the anniversary dates of the policies. It is then alleged that on or about June 10, 1932, the policies then being in full force and

effect, the insured became wholly disabled by bodily injury or disease, so as to prevent him from engaging in any occupation for remuneration or profit, such disability existing uninterrupted for not less than sixty days, and continuing up to his death, which occurred on July 18, 1933. It is also set out in the declarations that proof of the insured's disability was duly filed with the defendant company, but the date of such filing is not stated.

The material portions of the policies are as follows:

"And the Company agrees to pay to the Insured one-tenth of the face of this Policy per annum, during the lifetime of the Insured, if the Insured becomes wholly and permanently disabled before age 60, subject to all the terms and conditions contained in Section 1 hereof. . . . Section 1.—Total and Permanent Disability Benefits. Whenever the Company receives due proof, before default in the payment of premium, that the Insured, before the anniversary of the Policy on which the Insured's age at nearest birthday is 60 years and subsequent to the delivery hereof, has become wholly disabled by bodily injury or disease so that he is and will be presumably, thereby permanently and continuously prevented from engaging in any occupation whatsoever for remuneration or profit, and that such disability has then existed for not less than sixty days— . . . then

"1. Waiver of Premium.—Commencing with the anniversary of the Policy next succeeding the receipt of such proof, the Company will on each anniversary waive payment of the premium for the ensuing insurance year . . .

"2. Life Income to Insured.—One year after the anniversary of the Policy next succeeding the receipt of such proof, the Company will pay the

Insured a sum equal to one-tenth of the face of the Policy and a like sum on each anniversary thereafter during the lifetime and continued disability of the insured. ·. . .

"3. Recovery from Disability.—The Company may at any time and from time to time, but not oftener than once a year, demand due proof of such continued disability, and upon failure to furnish such proof, or if it appears that the Insured is no longer wholly disabled as aforesaid, no further premiums shall be waived nor income payments made. The . . . annual premium for the Total and Permanent Disability Benefits is $ . . ., and is included in the premium stated on the first page of this Policy. . . ."

The defendant demurred to the amended declaration in each case on the sole ground that it must appear in such declarations that the insured was alive one year after the anniversary of the policies next succeeding the receipt by the defendant of proof of the insured's disability, before it becomes liable under the policies to pay any disability benefits, whereas the declarations show that the insured was not alive at such time.

We do not accept the plaintiff's contention that, by reason of the phrasing of the first sentence of the paragraph numbered "2" of Section 1, she is entitled, in any event, to a full payment of one tenth of the face of the policies as the first disability payment, even if the insured died before such payment became payable. Such a construction of the sentence in question, in our judgment, does not conform to the apparent intent of the parties to the contract, and does violence to the language employed. In effect it breaks such sentence into two separate sentences, the first ending with the second use of the word "Policy." We are not justified in dividing the sentence involved in any such manner.

Two cases, in which were construed provisions in life insurance policies exactly similar to those in the policies now before us, have been called to our attention. The first of these, *Peek* v. *New York Life Ins. Co.*, 206 Ia. 1237, is relied on by the defendant. The material facts in that case correspond precisely with those in the instant case, the first payment due under the disability clause being involved, and the case fully supports the defendant's contention that the insured must be alive and totally disabled at the time such payment becomes due. The decision of the court in that case is based on a strict adherence to the letter of the language employed in the policy. It was held that the payments were annual, dating from the policy's anniversary next succeeding the proof of disability, and the fact that the company agreed to "pay the insured" was noted. The court said at page 1241: "We are of the opinion that the disability clause cannot be construed to require the company to pay one tenth of the policy on an anniversary which happens, not 'during the lifetime,' or not during the 'continued disability' of the insured, but happens after insured is dead, and after the disability is ended." The court also held that the benefits could not be apportioned, as there was no provision in the policy for so doing in case of death or cessation of liability, and as the consideration for such benefits, namely, an added premium, was single, not apportionable, and covered both the life income and a waiver of future premiums.

The second case, *Brownstein* v. *New York Life Ins. Co.*, 158 Md. 51, is cited by the plaintiff. It resembles the case at bar except for the fact that a subsequent disability payment, and not the first one, was in question. In that case the court held that the whole agreement, its objects and purposes, must be given consideration. Emphasis was placed on the use of the heading, "Life Income to Insured," as revealing the real purpose of the disability clause. The court found in the following language at page 57 that: "The apparent object of the policy was that, if the insured

should become so disabled that he could not engage in any occupation, the loss of 'remuneration or profit' would be replaced by an income which would tide him over the time of his necessity and assure him a living, and that is the thing for which he paid a consideration in addition to the premium on his life policy." After concluding that the anniversary of the policy was merely the pay day for the disability benefits, the court on page 59 continued: "If the assured should die before the anniversary date, the amount of the insurance that had accrued prior to the day of his death could not be paid to him, as he was not surviving on the anniversary date, and this again would gratify the terms of the contract; but the stipulations of the policy nowhere negative the accrual, from day to day, until that of death, of the benefits under the policy for total and permanent, continuous disability." It was then held that such benefits should be apportioned as of the day of the insured's death.

In *Peek* v. *New York Life Ins. Co., supra,* the court, in considering the material portions of the contract entered into by the parties, as set out in the policy before it, interpreted the language used narrowly, and as though it were unambiguous and susceptible of one meaning and construction only, namely, that which it was then being given. However, the court in *Brownstein* v. *New York Life Ins. Co., supra,* a case which was decided subsequently to the previously mentioned case, in passing upon exactly the same language which was before the Iowa court, and which is now before us for consideration, placed an interpretation thereon which is fundamentally and radically different from that given such language by the court in *Peek* v. *New York Life Ins. Co., supra.*

In our opinion, this situation tends to weaken the effect of the holding in the case last referred to. We are convinced as a result of the decisions in the two cases we have discussed, and of our own examination, that the meaning of the language which we are now passing upon, as used in

the policies before us, is not clear and unambiguous, but that the words as employed are, without testimony, susceptible of different interpretations. The conclusions reached by the two courts of last resort, above mentioned, so indicate. This being so, the general rule would apply, that under such conditions the policy involved should, if possible, be liberally construed in favor of the insured. This rule has been stated as follows: ". . . it is recognized as the settled doctrine that a policy of insurance must be liberally construed in favor of the insured, so as not to defeat, without necessity, his claim to the indemnity, which, in making the insurance, it was his object to secure; and, when the words are without evidence susceptible of two interpretations, that which will sustain his claim and cover the loss must in preference be adopted." Cooley's Brief on Ins., Vol. 2, (2d ed.) 994, and cases cited.

This court, in *O'Donnell* v. *New Amsterdam Casualty Co.*, 50 R. I. 269, in following this rule, said, at page 273: "Moreover the clause is ambiguous and susceptible of more than one meaning. Such being the case, as the language is that of the insurer, following the established rule of construction, any uncertainty in the meaning will be decided in favor of the assured rather than of the insurer. *Brady* v. *Norwich Union Fire Ins. Society, Ltd.*, 47 R. I. 416." See also *Koury* v. *Providence-Washington Ins. Co.*, 50 R. I. 118.

Applying these general principles to the construction of the disputed language as set out in the policies, it would appear that for an additional premium the insured was purchasing protection, within certain defined limits, against total disability, and also relief from the payment of premiums while the disability continued. The obvious purpose of such protection was to furnish money to the insured to assist in his maintenance at a time when he was totally incapacitated from assisting himself. As this was the object of the disability provisions of the policies now before us, t is our opinion that the right to such benefits began to

accrue to the insured, all other terms of the policies having been complied with, from the date when the defendant company received due proof under such policies of the assured's total disability, and continued till he died or recovered therefrom. The selection of the anniversary date of the policies as the day for paying the disability benefits was merely for the purpose of having a convenient date fixed for making such payments. After the first payment, the subsequent payments would be on the basis of a yearly accrual, or on such part of a year as the facts might show. The first payment, however, because of the uncertainty of the time when the defendant company might receive notification of the insured's disability, would, of necessity, cover more than one year's accrual, the first payment under the policies not being called for till the anniversary of the policy next succeeding the anniversary following the receipt of such notices.

If the insured should die, as in the instant cases, before the date arrived for making the first disability payments, we see no reason why the insured's representative should not be entitled to such part of the disability benefits as may already have accrued from day to day up to the time of the insured's death. In our judgment, a reasonable construction of the terms of the policies requires that, in the present cases, the plaintiff be entitled to an apportionment of the first payment of disability benefits due under such policies. Such apportionment would be based on the relation the date of the insured's death bore to the whole period extending from the time when the defendant received due proof of the insured's total disability, to the date of the anniversary of the policies next succeeding the anniversary following such receipt of proof. The fact that the additional premium, the consideration for the added protection in case of total disability, can not be apportioned, in our opinion does not prevent the apportionment of the disability benefits. The two payments are on a different basis. The premium is an entire payment in advance, expressly pro-

vided for by the terms of the policies. The disability benefits accrue from day to day as the disability continues, the time for payment only being postponed to certain stated dates.

We find, therefore, that, for the plaintiff to recover, it is not necessary that the insured be alive one year after the anniversary of the policies next succeeding the receipt by the defendant of due proof of insured's disability. It was error for the superior court to sustain the defendant's demurrers to the plaintiff's amended declarations.

The plaintiff's exception in each case is sustained, and each case is remitted to the superior court for further proceedings.

*Baker & Spicer, Walter I. Sundlun, Daniel Jacobs,* for petitioner.

*Moss, Haslam & Arnold,* for defendant. *W. Vincent Sumpter, Harry A. Tuell,* of counsel.