PER CURIAM.
This is an appeal by the plaintiffs below from an adverse summary judgment. Plaintiffs sought recovery under an insurance policy for loss of certain personal property by theft. The determinative question in the court below, and here, was one of construction of the terms of the policy as applied to the loss claim. The trial court concluded against coverage. We find error, and reverse.
The material facts were not in dispute. The property consisted of certain tools, owned by the plaintiff William Bramlett, which usually were kept and used by him personally at his residence. He took the tools to his employer’s place of business, to lend them to a friend for the latter’s temporary personal use there over a weekend. The tools were stolen before the friend had an opportunity to use them.
A portion of the policy designated as containing provisions applicable to “Section 1” dealt with coverage “C — Unscheduled Personal Property.” The first section thereunder related to such property “on premises,” and the second to such property “Away from premises.”[1] Those provisions *821 were followed by a listing of eighteen perils insured against. The eleventh peril there listed related to theft, as follows:
“Theft, meaning any act of stealing or attempt thereof and, as to Coverage C (on premises), including theft of property covered from within any bank, trust or safe deposit company, public warehouse, or occupied dwelling not owned or occupied by or rented to an insured, in which the property covered had been placed for safe keeping.”
The trial court appears to have construed the above quoted provision relating to the peril of theft to limit recovery for loss of unscheduled personal property by theft, to theft of property “on premises,” and to afford no recovery for loss of unscheduled personal property “away from premises” resulting from theft. In our view the trial court was in error in placing such construction on the statement in the policy as to the peril of theft. We do not observe therein any language or evidence of intent to nullify the express provision for coverage of such property “away from premises,” where the loss is from theft. On the contrary, “Theft” is listed as one of the perils insured against, and is defined as “meaning any act of stealing or attempt thereof.”
The language of the quoted provision relating to theft as a peril represents an explanation, in the way of an extension of coverage of such property “on premises,” by providing that such property, if stolen from within a bank, public warehouse, or occupied dwelling not owned or occupied by or rented to an insured, in which the property has been placed for safe keeping, will be considered to be within the coverage of property described in the policy as “on premises.” Stated differently, the questioned provision relating to the peril of theft does not show intent to exclude coverage from theft for unscheduled personal property “away from premises,” but enlarges on the description of property of the “on premises” category for which coverage for loss by theft will apply. Following the above quoted provision as to theft as a peril, are three exclusionary provisions relating thereto, none of which is applicable to the facts of this case.
For the reasons stated we conclude that the policy provided coverage for the loss claimed and that the holding of the trial court to the contrary was incorrect. The provisions of the policy relating to coverage of the personal property involved, in the circumstances of this case, appear to be clear and unambiguous, so as to preclude a need to resort to the canons of construction that inform us that provisions of an insurance policy relating to coverage which are conflicting or ambiguous are to be construed liberally in favor of the insured. See Elliott v. Belt Auto Assn., 87 Fla. 545, 100 So. 797; Inter-Ocean Casualty Co. v. Hunt, 138 Fla. 167, 189 So. 240; 18 Fla. Jur., Insurance § 407.
The appellants present the further contention that the trial court committed error in granting the defendant’s motion to strike from the list of property lost the “Snap-On-Tools,” therein valued at $1,300, representing three-fourths in amount of the total loss claimed.
*822 The list of the property alleged to have been lost, appended as an exhibit to the complaint, gave no details as to the “Snap-On-Tools — $1,300.” On the remainder of the tools listed, there were designations of the companies from which obtained, with separate invoice numbers and cost or valuation figures. The latter aggregated $469.70.
An order was entered requiring the plaintiffs to make a reasonable effort to obtain from Snap-On-Tools Corp. itemized invoices describing those tools, and directing that plaintiffs should provide such invoices within 30 days, or in the alternative produce evidence of refusal of that company to supply the invoices. Thereafter an order was entered reciting that reasonable effort to obtain such invoices under the prior order had been made without success, and directing the plaintiff to file, within 15 days, an affidavit “reciting the itemized list of all such (Snap-On-Tools) and the value thereof as to each item at the time of loss or theft.” In a timely, but misguided effort to comply therewith, the plaintiff Bramlett filed an affidavit to which was attached the same list as that appended to the complaint, which supplied itemization as to the tools other than the Snap-On-Tools, but which did not supply itemization of the latter.
Thereupon the trial court entered an order, on motion of the defendant, striking from the plaintiff’s list of property lost the item of “Snap-On-Tools — $1,300,” thereby reducing the plaintiff’s property loss claim from a total of $1,769.70 to $469.70.
On the date of that order the defendant filed an answer. The answer set out four matters of defense representing claims of non-coverage. None of the pleaded defenses raised a dispute involving itemization or valuation of the property, or items thereof, for which loss was claimed.
The purpose of the discovery or request for more definite statement with respect to the items included in the claim for the Snap-On-Tools was to enable the defendant to frame a responsive pleading to the complaint, which (presumably) it was represented the defendant was unable to do without itemization of the Snap-On-Tools claim. See Rule 1.140(e) F.R.C.P., 30 F. S.A. As disclosed by the answer, when filed, the matter of itemization of the Snap-On-Tools was not relevant to the defenses pleaded, and would have been material only in relation to proof or attempted proof of damages at a trial, if the defendant’s contentions of non-coverage should not prevail.
Several weeks after the Snap-On-Tools claim was stricken from the list of the property loss, the plaintiff did supply itemization as to the Snap-On-Tools. That consisted of a three page list of such tools with individual valuations thereof, supported by plaintiff’s affidavit.
 We hold that in granting defendant’s motion to strike the Snap-On-Tools claim from the list of property for which loss was claimed, upon the failure of the plaintiffs to make timely compliance with the court’s order for itemization thereof, the trial court did not commit error, because such an order was authorized in that circumstance, by the above cited rule of civil procedure. However, since the plaintiff’s failure to produce such itemization prior to answer did not appear to be an impediment to the framing of the defenses pleaded in the answer, and inasmuch as the itemization thereof was supplied within a reasonable time later, and prior to trial, it would appear to be within the discretion of the trial court, upon trial of the cause following remand, to determine whether justice in the cause would best be served by adhering to the order striking such tools from the claim of loss, or by accepting the late filed itemization thereof as representing the alleged loss of such property.
Accordingly, the summary judgment denying coverage under the policy is reversed, and the order granting the defendant’s motion to strike is affirmed; and the cause is remanded for further proceedings.

. “COVERAGE C — UNSCHEDULED PERSONAL PROPERTY.
“1. On premises: This policy covers unscheduled personal property usual or incidental to the occupancy of the premises as a dwelling, owned, worn or used by an Insured, while on the premises, or at the option of the Named Insured, owned by others while on the portion of the premises occupied exclusively by the Insured.
“This coverage does not include: animals, birds, automobiles, vehicles licensed for road use and aircraft; the property of roomers or boarders not related to the Insured; articles carried or held as samples or for sale or for delivery after sale or for rental to others; and property which is separately described and specifically insured in whole or in part by this or any other insurance.
*821 “2. Away from premises: This policy also covers unscheduled personal property as described and limited, while elsewhere than on the premises anywhere in the world, owned, worn or used by an Insured, or at the option of the Named Insured, owned by a guest while in a temporary residence of, and occupied by an Insured or owned by a residence employee while actually engaged in the service of an Insured and while such property is in the physical custody of such residence employee or in a residence temporarily occupied by an Insured. Property pertaining to a business is not covered.
“The limit of this Company’s liability for such property while away from premises shall be an additional amount of insurance equal to 10% of the amount specified for Coverage C, but in no event less than $1,000.”