SHEVIN, Judge.
The Paul Revere Life Insurance Company appeals a final summary judgment in favor of Emergency Room Medical Associates, Inc. [“ERMA”], finding coverage under a disability insurance policy. We reverse.
Paul Revere issued a “Disability Policy for Business Buyout Expense” to ERMA to cover losses it would incur if its shareholder, Dr. Steven N. Ecker, became disabled and ERMA was required to buy his shares in the practice. Paul Revere also issued Dr. Ecker an individual disability policy. Three years later, Dr. Ecker and ERMA filed total disability claims, asserting that Dr. Ecker’s lifelong degenerative eye disease, keratoconus, rendered him unable to work. Dr. Ecker had been receiving treatment for keratoconus since he was 14 years old. Paul Revere denied the claims asserting that the illness was not a covered “sickness” under the policy because it manifested itself before the policy was issued.[1] Dr. Ecker sued Paul Revere in federal court to recover under his disability policy. The court awarded Paul Revere a summary judgment finding that the condition was not covered under the policy because it manifested itself before the policy’s issue date. Ecker v. The Paul Revere Life Ins. Co., No. 96-0553 (S.D.Fla. Mar. 16, 1998)(order granting partial summary judgment).
ERMA filed an action against Paul Revere in Miami-Dade County Circuit Court for breach of contract. ERMA argued that Paul Revere could not deny coverage under the policy’s incontestability clause, pursuant to section 627.607, Florida Statutes (2002), because the policy had been in force for over two years when it filed the disability claim. Paul Revere answered that no benefits were due under the policy because Dr. Ecker’s condition manifested itself prior to the issuance of the policy and is not a covered “sickness,” as defined in the policy. Both parties filed motions for summary judgment. The court granted ERMA’s motion finding that the incontestability clause precluded Paul Revere from denying coverage, and finding that the policy was ambiguous, contravening section 627.607. Paul Revere appeals.
*444 The issue in this case is whether an insurer can deny disability coverage for a condition that manifested itself before the disability policy was issued, or whether the claim must be paid because it was submitted beyond the policy’s two-year incontestability period. We hold that the incontestability clause does not apply to this claim as it falls outside the policy’s scope of coverage.
Incontestability clauses place a time limit on an insurer’s ability to contest a policy based on misrepresentations or other conditions of coverage. 17 Couch on Insurance § 240:1, at 240-8 (3d ed.2000). The incontestability clause “safeguards an insured from excessive litigation many years after a policy has already been in force .... ” Massachusetts Cas. Ins. Co. v. Forman, 516 F.2d 425, 428 (5th Cir.1975); Prudential Ins. Co. v. Prescott, 130 Fla. 11, 176 So. 875 (1937). However, “an incontestability] clause in a disability policy does not deprive the insurer from defending on the ground that the particular disability was never within the policy coverage.” Forman, 516 F.2d at 428. “The provision that a policy shall be incontestable after it has been in force during the lifetime of the insured for a period of two years is not a mandate as to coverage, a definition of the hazards to be borne by the insurer. It means only this, that within the limits of the coverage the policy shall stand, unaffected by any defense that it was invalid in its inception .... ” Forman, 516 F.2d at 428-29 (citing United States v. Kaminsky, 64 F.2d 735 (5th Cir.l933)(Cardozo, C.J.)).
Where loss is claimed by reason of disability covered by the policy, it is necessary, under the average policy, that the cause of such disability arise within the policy terms and after the insurance has been effected. This is a condition of liability, a condition of the insurance, .... The incontestable clause does not apply under those circumstances, and there can be no recovery unless the cause of disability arose within the time designated.
1A Appleman, Insurance Law and Practice § 333 at 390 (1981).
The threshold question in a case involving application of an incontestability clause is “whether the claim of the insurer relates to the validity of the policy or whether it relates to limitations of coverage. If it relates to the former it is barred; if to the latter it is not.” Home Life Ins. Co. v. Regueira, 313 So.2d 438, 439 (Fla. 2d DCA 1975), cert. denied, 328 So.2d 844 (Fla.1976); Preferred Risk Life Ins. Co. v. Sande, 421 So.2d 566 (Fla. 5th DCA 1982). ERMA’s case falls under the latter scenario. This case involves a denial of coverage based on a coverage limitation: The Paul Revere disability policy definition of “sickness” excludes diseases that manifest themselves before the policy issues. See supra n. 1.
It is undisputed that Dr. Ecker’s condition manifested itself many years before the policy was issued. The fact that the illness did not become disabling until after the policy was in force is not the determinative factor. This fact does not automatically bring the claim under the protection of the policy’s incontestability clause.[2]
*445 This case is governed by this court’s decision in North Miami General Hospital v. Central National Life Insurance Co., 419 So.2d 800 (Fla. 3d DCA 1982). North Miami General Hospital involves an identical issue: A denial of coverage for a claim filed beyond the two-year incontestability period for a disease that had been diagnosed before the policy was issued. To determine whether the incontestability clause controlled, the court focused on the date the loss was incurred — the date the insured was first treated for the condition. Id. at 802. In the case before us, the loss was incurred when Dr. Ecker began receiving treatment for keratoconus. Under the reasoning in North Miami General Hospital, no benefits are available to ERMA.
Moreover, if we were to adopt the argument that the loss occurs on the date the claim is filed, an argument rejected in North Miami General Hospital, then “an insured could always avoid contestability merely by waiting until the two-year period had expired before filing a claim. We cannot adopt an interpretation which would render the legislatively-created two-year provision ineffective and purposeless.” Id. Here, the incontestability clause does not work to create coverage. See also Barnes v. Lincoln Nat’l Life Ins. Co., 338 So.2d 898 (Fla. 1st DCA 1976)(incon-testable clause ineffective to overcome restriction-of-benefits endorsement).
In addition, the three cases the trial court relied on in granting summary judgment, Kaufman v. Mutual of Omaha Insurance Co., 681 So.2d 747 (Fla. 3d DCA 1996), Lubin v. Provident Life & Accident Insurance Co., 681 So.2d 753 (Fla. 3d DCA 1996), and DiFranco v. National Foundation Life Insurance Co., 551 So.2d 535 (Fla. 3d DCA 1989), do not require an affirmance. These cases are not disposi-tive of the issue before us.
In Kaufman, the court held that an insurer could not attack the validity of an insurance contract after the two-year incontestability period had expired. Significantly, the Kaufman court emphasized that there was no evidence that the insured’s condition, for which benefits were being claimed, had been diagnosed or treated before issuance of the policy. Kaufman, 681 So.2d at 751 n. 7. Here, there is no dispute that Dr. Ecker’s condition was diagnosed and treated before the policy was issued.
Lubin reversed a final judgment based on Kaufman. Lubin is inapplicable to our case because it held that a policy could not be rescinded based on misrepresentations in the insurance application after the two-year incontestability period had expired. We are not addressing that issue.
DiFranco is also inapplicable. It addresses ambiguous insurance policy clauses regarding covered illnesses. Based on the ambiguities, the court interpreted the policy in the light most favorable to the insured. There are no such ambiguities here.
Forman addressed the scenario we have before us: An insured seeking disability benefits based on an illness for which he was diagnosed and treated before the disability policy was issued. Like the Paul Revere policy, the Forman policy provided benefits for any “[s]ickness which first manifests itself during the terms of this policy.” Forman, 516 F.2d at 427. Forman recognized that the insurer was not entitled to rescind or cancel the policy after the incontestability period. However, there could be no coverage for a condition that manifested itself before the policy was issued. As Paul Revere suggests, in *446 contestability clauses cannot be used to extend coverage where none is provided by the policy terms. N. Miami Gen. Hosp., 419 So.2d at 802 n. 3 (citing Forman, 516 F.2d 425 (5th Cir.1975)). Here, as in Forman, Ecker’s illness is not within the scope of policy coverage and Paul Revere properly denied ERMA’s claim.
Based on the foregoing, we reverse the summary judgment and remand with instructions to enter summary judgment in Paul Revere’s favor on the issue of coverage.
Reversed and remanded.

. Paragraph 1.7 of the policy states: " ‘Sickness’ means sickness or disease that first manifests itself after the Date of Issue while Your Policy is in force.”

. The policy’s incontestability clause follows the language of section 627.607, Florida Statutes (2002). The clause provides:
¶ 7.1 INCONTESTABLE
a. After Your Policy has been in force for two years, excluding any period during which the Insured is disabled, We cannot contest the statements in the Application.
b. No claim for loss incurred or disability beginning after two years from the Date of Issue will be reduced or denied because a sickness or physical condition (not excluded by name or specific de *445 scription) had existed before the Date of Issue.